# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CAMILA KLINGER, ) | |
| ) | |
| Plaintiff, ) | Case No. 11 C 05346 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| BIA, Inc., a/k/a Skybar, a/k/a Fuze, ) | |
| and ANTHONY ANTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Camila Klinger was the general manager for Defendant BIA, Inc., a Chicago nightclub formerly known as "Skybar" when Klinger worked there (now it goes by "Fuze"). Klinger alleges that Skybar's owner, Defendant Anthony Anton, fired her for two sets of reasons: (1) in retaliation for her opposition to Skybar's alleged discrimination against black customers; and (2) in retaliation for her refusal to participate in, and her protestations against, various violations of Illinois liquor laws, a Chicago drinking-age ordinance, and federal and state tax laws. For opposing discrimination against black customers, the complaint asserts 2 theories of liability: employment discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* (Count 1), and race discrimination (specifically, retaliation) in the making of contracts, 42 U.S.C. § 1981 (Count 2). For protesting against the various federal, state, and local laws, the

complaint asserts another 2 theories of liability: the Illinois Whistleblower Act, 740 ILCS 174/20 (Count 3), and Illinois common law of retaliatory discharge (Count 4).[1]

Skybar moves to dismiss [R. 10] all of the counts. As explained below, the Title VII claim must be dismissed because Skybar's alleged treatment of its customers do not constitute unlawful *employment* practices prohibited by Title VII, and thus Klinger's opposition to the discriminatory treatment cannot form the basis of a Title VII retaliation claim. In contrast, the § 1981 claim survives because § 1981 does bar race discrimination in the making of contracts (not just in employment), and thus does bar a nightclub from discriminating against its customers and prospective customers on the basis of race. Because § 1981 prohibits that type of discrimination, and because § 1981 also prohibits retaliation for opposing that type of discrimination, Klinger states a claim under § 1981. The state law claims also survive because Klinger alleges in sufficient factual detail her refusal to participate in, and her opposition to, the violations of specific federal, state, and local laws allegedly committed by Defendants. Nor is the Illinois Whistleblower Act unconstitutionally vague in using the phrase "refusing to participate" in describing its scope. Thus, the motion to dismiss is granted in part and denied in part.

---

[1]The Court has subject matter jurisdiction over the federal claims under federal-question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction over the closely related state law claims, 28 U.S.C. § 1367.

**1.     Title VII**

Title VII bars employment discrimination on the basis of race (as well as on other grounds), and the law also contains an explicit anti-retaliation provision: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). This anti-retaliation provision, which is not textually limited to particular forms of retaliation, "must be construed to cover a broad range of employer conduct." *Thompson v. North American Stainless*, – U.S. –, 131 S. Ct. 863, 868 (2011) (citing *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 62 (2006)). Of course, firing an employee in retaliation for opposing a Title VII-barred employment practice would run afoul of the anti-retaliation provision. *See Burlington*, 548 U.S. at 64-65.

But here the question is whether the complaint adequately alleges, as a matter of law, opposition to "an unlawful employment practice" under Title VII. § 2000e-3(a). The answer is no. Skybar's alleged discriminatory treatment of its customers and potential customers do not comprise *employment* practices. Title VII defines "unlawful employment practice" as follows:

It shall be an unlawful employment practice for an employer–

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

3

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1), (2). Although the definition of "unlawful employment practice" covers a broad range of practices, the only prohibited practices are those that discriminate "with respect to . . . employment," or that deprive an individual of "employment" opportunities or otherwise adversely affect his status as an "employee." *Id.* Skybar's treatment of its customers, as distinguished from its employees, simply do not qualify as an "employment" practice. *See Denham v. Saks, Inc.*, 2008 WL 2952308, at *7 (N.D. Ill. July 30, 2008). It is true that, to adequately allege a retaliation claim, Klinger need only allege that she had a "sincere and reasonable belief" that she was opposing an unlawful employment practice. *Magyar v. Saint Joseph Regional Medical Center*, 544 F.3d 766, 771 (7th Cir. 2008) (citing *Hamner v. St. Vincent Hospital*, 224 F.3d 701, 706-07 (7th Cir. 2000)). But the objective reasonableness of the belief turns on whether the opposed practice "falls into the category of conduct prohibited by the statute." *Id.* at 771. Here, Title VII does not address a company's alleged discrimination against its customers. Count 1 fails to state a claim, and is dismissed.

### 2. Section 1981

In contrast to Title VII, 42 U.S.C. § 1981 *does* address a company's discrimination against its customers and potential customers. Although now codified in its present home in Title 42, § 1981 traces its roots to § 1 of the Civil Rights Act of 1866. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 448 (2008) (citing *General*

*Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 383-84 (1982)). Section 1981 declares that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Unlike Title VII, the text of § 1981 readily covers a company's refusal to enter into a contract with a potential customer on the basis of race, as well as a company's setting of discriminatory contractual terms on the basis of race. *See Bagley v. Ameritech Corp.*, 220 F.3d 518, 520 (7th Cir. 2000). Both of those forms of discrimination are alleged by Klinger: (a) Skybar allegedly refused to enter into contracts with blacks who proposed to rent the club for birthday parties and refused to allow blacks entry into the club at certain times; and (b) Skybar allegedly charged blacks with higher cover charges before agreeing to allow them to enter the club. According to the complaint, Klinger was fired in retaliation for opposing those practices, and the Supreme Court has interpreted § 1981 to prohibit retaliation for opposition to substantively-barred discrimination. *CBOCS West*, 553 U.S. at 451-52.

Rather than argue that § 1981 does not cover its alleged treatment of customers, Skybar instead argues that Klinger – as a non-customer – cannot bring a retaliation claim based on her opposition to Skybar's customer practices. Skybar's argument, however, lumps together Title VII and § 1981, R. 10 at 4-6, and that produces an analytical tangle. The very first step in the argument is the problem: Skybar contends that Title VII and § 1981 claims "are subject to the same liability standards," so "the same analysis applies to both" counts. R. 10 at 4. Not exactly. When the alleged liability is for an *employment* practice, Title VII and § 1981 analyses do track closely.

5

And when the alleged liability is for a practice that has nothing to do with the making of a contract, then neither Title VII nor § 1981 apply. But if the opposed discrimination is discrimination in the making of contracts – such as with respect to the customers and potential customers here – then the difference is crucial. Skybar's cited cases – all of which are Title VII cases – do not fit. Skybar relies most heavily on two appellate decisions which refused to permit particular retaliation claims under Title VII, R. 10 at 5, but both of those cases involved opposition to discrimination against individuals who had no contractual relationship (or proposed contractual relationship) to the alleged discriminators. In *Evans v. Kansas City, Missouri School District*, the opposed discrimination was discrimination by a public school against its students, and there was no hint of the making of a contract between the students and the public school. 65 F.3d 98, 101 (8th Cir. 1995). Same problem with *Wimmer v. Suffolk County Police Department*: the opposed discrimination was discrimination by police officers against the public, and again naturally there was no contract or proposed contract between the officers and the public. 176 F.3d 125, 134 (2d Cir. 1999). Similarly, the other cases cited by Skybar are Title VII-only cases and suffer from the same problem;[2] the one possible exception is *Melton v. Five Four Corp.*, 2000 WL 97568, at *9 (N.D. Ill. Jan. 25, 2000), but that case actually permitted the retaliation claims to go forward. Untangled from Title VII, the analysis permitting Klinger's § 1981 claim is straightforward: § 1981

---

[2]For those who plan on looking up the cited cases, there is a typographical error in Skybar's citation to *Richardson v. Rush-Presbyterian-St. Luke's Medical Center*, which is actually found at 2002 WL 461695 (N.D. Ill. March 26, 2002).

prohibits discrimination in the making of contracts, including contracts with customers; § 1981 also prohibits retaliation against a person who opposes prohibited-discrimination; thus, Klinger states a claim for retaliation because she allegedly opposed Skybar's discrimination against its customers and prospective customers. Count 2 survives.

### 3. Illinois State Law Claims

Skybar also moves to dismiss the Illinois Whistleblower Act claim (Count 3) and the state common law retaliatory discharge claim (Count 4). Against both claims, Skybar argues that the complaint inadequately alleges facts showing that Klinger's firing was based on her refusal to participate in, or her opposition to, the federal, state, and local law violations allegedly committed by Skybar. And Skybar asserts that the complaint is internally inconsistent because it alleges that Klinger was fired both for opposing the discriminatory treatment of customers and for opposing the various violations of law.

The Court rejects these arguments because the allegations are more than adequate at this stage of the litigation. None of the Supreme Court's recent Rule 8 decisions, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007), *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, –, 129 S. Ct. 1937, 1949-50 (2009), dictate otherwise. To be sure, conclusory legal statements do not count among those factual allegations that must be accepted as true, and the complaint must allege a plausible claim on its face. *Iqbal*, 129 S. Ct. at 1949-50. And deciding whether a complaint states a plausible claim is a "context-specific task." *Id.* at 1950. But Klinger's

complaint scales all of these obstacles. Klinger describes and cites, in detail, alleged violations of federal and state tax laws, Illinois state liquor laws, and a Chicago ordinance barring the serving of alcohol to minors and barring the entry of minors into bars. No doubt discovery will illuminate, and perhaps narrow, the allegations, but Skybar is on adequate notice of the claims. *See Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010) (using straightforward employment discrimination case to describe sufficient post-*Iqbal* allegations). Nor is the complaint sunk by the allegations that Skybar fired Klinger both for opposing discrimination against customers and for opposing the alleged violations of federal, state, and local laws: it is perfectly plausible that Skybar had mixed motives for firing Klinger, and indeed Klinger – at this stage of the litigation – may also plead in the alternative.

Skybar's final argument is that the Illinois Whistleblower Act is unconstitutionally vague. The Act prohibits employers from retaliating "against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation . . . ." 740 ILCS 174/20. Skybar contends that "refusing to participate" is too vague a term, so vague as to be unconstitutional. In support, Skybar cites one case – having nothing to do with the Whistleblower Act – for the general proposition that a law is unconstitutionally vague when a person of "common intelligence must guess at its meaning." R. 10 at 9 (citing *Union Nat'l Bank & Trust v. Village of New Lenox*, 505 N.E.2d 1, 3 (Ill. App. Ct. 1987)). Beyond this one case, Skybar cites nothing. R. 10 at 9.

8

That silence is especially damning when there is an Illinois Appellate Court decision that interprets the very phrase that Skybar condemns for vagueness. In *Sardiga v. Northern Trust*, 948 N.E.2d 652, 657 (Ill. App. Ct. 2011), the court interpreted "refusing to participate," and no guessing was required:

> Here, the language of the statute is unambiguous. "Refusing to participate" means exactly what it says: a plaintiff who participates in an activity that would result in a violation of a state or federal law, rule, or regulation cannot claim recourse under the Act. . . . Instead, the plaintiff must actually refuse to participate. Black's Law Dictionary defines "refusal" as "[t]he denial or rejection of something offered or demanded." Black's Law Dictionary 1394 (9th ed. 2009). Indeed, the very title of section 20, "Retaliation for certain refusals prohibited," suggests that not every refusal qualifies for protection under the Act. . . . Furthermore, the Act protects employees who complain to a government agency about an activity that the employee reasonably believes constitutes a violation of a state or federal law, rule, or regulation. . . . Thus, "refusing" means refusing; it does not mean "complaining" or "questioning," as Sardiga would have us believe.

948 N.E.2d at 657 (statutory citations omitted).[3] *Sardiga* explains well that "refusing to participate" has a plain meaning. There is no vagueness defect, especially considering that a statute need not be so precise that there are never "close cases," *see United States v. Williams*, 553 U.S. 285, 305 (2008). Moreover, liability under the Act is civil in nature, not criminal, and in order to be held liable under the Act, an employer must know that the employee refused to participate in the illegal activity, and that state of mind requirement further mitigates any vagueness problem. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99

---

[3]It is odd that Skybar did not discuss *Sardiga*'s interpretation of "refusing to participate" in presenting the vagueness challenge, particularly where Skybar cited the case in a string cite earlier in its brief. R. 10 at 7.

(1982) ("The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.") The vagueness challenge is rejected.

As a final procedural note, pursuant to 28 U.S.C. § 2403(b), the Clerk of the Court is directed to send a copy of this opinion to the Attorney General of Illinois, to alert the State that a constitutional challenge has been made (but rejected) against one of its laws.

ENTERED:

*Edmond E. Chang*

Honorable Edmond E. Chang
United States District Judge

DATE: October 18, 2011